UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ROBERT MALEK, in care of M.M.,

                                    Plaintiff,              1:21-CV-1230
                                                            (BKS/DJS)
              v.

NEW YORK STATE
UNIFIED COURT SYSTEM, et al.,

                                    Defendants.

_____

APPEARANCES:                              OF COUNSEL:

ROBERT MALEK
Plaintiff, pro se
East Meadow, NY 11554

HON. LETITIA JAMES                        AMANDA K. KURYLUK, ESQ.
New York State Attorney General           Ass't Attorney General
Attorney for Defendants DiFiore, Poole,
Stanley, Williams, NYS Unified Court System,
NYS Office of Children and Family Services,
The Capitol
Albany, NY 12224

HON. SYLVIA O. HINDS-RADIX                MARK G. TOEWS, ESQ.
New York City Corporation Counsel         Ass't Corporation Counsel
Attorney for Defendants NYC ACS,
Almonte
100 Church Street
New York, NY 10007

VIGORITO, BARKER, PATTERSON,              GREGG D. WEINSTOCK, ESQ.
NICHOLS & PORTER LLP
Attorneys for Defendant Johnson
300 Garden City Plaza, Suite 100
Garden City, NY 11530

BRENDA K. SANNES
Chief United States District Judge

## MEMORANDUM-DECISION AND ORDER

## I.   INTRODUCTION

Plaintiff Robert Malek ("Plaintiff") commenced this action by filing a pro se civil rights complaint against the following individuals and agencies: Rosmil Almonte; the Honorable Janet DiFiore; Margaret Ingoglia; Travis Johnson; the New York State Office of Children and Family Services ("NYS OCFS"); the New York City Administration for Children's Services ("ACS"); the New York State Office of the Inspector General ("NYS OIG"); the New York State Unified Court System ("NYS UCS"); Sheila Poole; Beverly Stanley; and the Honorable Jacqueline Williams.  Dkt. No. 1 ("Compl.").[1]  After the completion of service on most of the Defendants, the following motions and letter requests were filed, which are presently before the Court for review: (1) a motion to obtain electronic access to this action through the Court's electronic filing system, CM/ECF, filed by Plaintiff, Dkt. No. 21 ("CM/ECF Motion"); (2) a motion to dismiss the complaint for improper venue, lack of jurisdiction, and failure to state a claim upon which relief may be granted, filed by Defendant Johnson, Dkt. No. 27 ("Johnson Motion to Dismiss"); (3) a motion to strike an anticipated responsive pleading from ACS, filed by Plaintiff, Dkt. No. 31 ("Motion to Strike Anticipated Pleading"); (4) a motion for leave to file a supplemental and amended complaint, filed by Plaintiff, Dkt. No. 32 ("First Motion to Amend and Supplement"); (5) motions to disqualify the New York State Attorney General's Office from representing Defendant Williams, filed by Plaintiff, Dkt. Nos. 33, 34 ("Motions to Disqualify"); (6) a motion for sanctions against Defendant Johnson and his attorneys, filed by

---

[1]  This action was originally assigned to the Honorable Thomas J. McAvoy.  By Text Order entered on February 28, 2022, Senior Judge McAvoy recused himself from this case, which was reassigned to the undersigned for all further proceedings. Dkt. No. 9.

Plaintiff, Dkt. No. 51 ("Request for Sanctions Against Johnson and His Counsel"); (7) letter requests for subpoenas and court assistance with effectuating service, filed by Plaintiff, Dkt. Nos. 55, 58 ("Subpoena Requests"); (8) a second motion to supplement the complaint, filed by Plaintiff, Dkt. No. 59 ("Second Motion to Supplement"); (9) a letter request for leave to amend the complaint after all Defendants have submitted an answer, filed by Plaintiff, Dkt. No. 62 ("Letter Request for Leave to Amend"); (10) a letter request for leave to amend the complaint before all answers are submitted, filed by Plaintiff, Dkt. No. 63 ("Motion to Amend"); (11) a letter request for designation as "Next Friend" of Plaintiff's minor child, hereinafter referred to as M.M., filed by Plaintiff, Dkt. No. 64 ("Next Friend Request"); (12) a motion to strike Defendant Johnson's reply to the Johnson Motion to Dismiss, filed by Plaintiff, Dkt. No. 65 ("Motion to Strike Johnson's Reply"); (13) a motion to dismiss the complaint for improper venue, lack of jurisdiction, and failure to state a claim upon which relief may be granted, filed by Defendants NYS OCFS, NYS UCS, DiFiore, Poole, Williams, and Stanley (collectively, the "State Defendants"), Dkt. No. 70 ("State Defendants' Motion to Dismiss"); (14) a motion to dismiss the complaint for improper venue, lack of jurisdiction, and failure to state a claim upon which relief may be granted, filed by Defendants Almonte and ACS (collectively, the "City Defendants"), Dkt. No. 79 ("City Defendants' Motion to Dismiss"); (15) a letter request for court intervention related to an alleged crime committed by ACS workers, filed by Plaintiff, Dkt. No. 107 ("Request for Court Intervention"); (16) a letter motion for the Court to strike a submission from Plaintiff, filed by the State Defendants, Dkt. No. 111 ("State Defendants' Request to Strike"); and (17) a motion to supplement the opposition to City Defendants' Motion to Dismiss, filed by Plaintiff, Dkt. No. 126 ("Motion to Supplement Opposition to City Defendants' Motion to Dismiss").

The Defendants who have appeared have filed responses to the disqualification and sanctions motions that relate to them, and Plaintiff has opposed each of the dispositive motions.  *See* Dkt. Nos. 42, 43 ("Oppositions to Motions to Disqualify"); Dkt. No. 44 ("Opposition to Johnson Motion to Dismiss"); Dkt. No. 53 ("Opposition to Motion to Strike Anticipated Pleading"); Dkt. No. 54 ("Second Opposition to the Johnson Motion to Dismiss"); Dkt. No. 69 ("Opposition to the Motion for Sanctions Against Johnson"); Dkt. No. 82 ("Opposition to the State Defendants' Motion to Dismiss"); Dkt. No. 116 ("Opposition to City Defendants' Motion to Dismiss").  The State Defendants and Johnson have also opposed the Second Motion to Supplement, and all of the Defendants who have appeared in the case have opposed the Motion to Amend.  *See* Dkt. Nos. 73, 75, 105, 108, 109.[2]

## II.    MOTIONS TO STRIKE, DISQUALIFY, AND IMPOSE SANCTIONS

Before the Court may consider the arguments raised by the Defendants in their dispositive motions, it must first consider the motions to strike, disqualify, and impose sanctions – all of which were filed by the Plaintiff before the dispositive motions were fully briefed – as these motions impact the scope of what (or who) may or may not be before this Court.[3]

### A.    Motion to Strike Anticipated Pleading

After naming ACS as a defendant in this action, Plaintiff filed a motion to strike a

---

[2]  Following Plaintiff's filing of the Motion to Amend, he filed a proposed amended complaint, with exhibits.  Dkt. No. 91 ("Prop. Am. Compl.").

[3]  Although certain Defendants have sought dismissal of the pleadings for lack of jurisdiction, the law is well-settled that, even if a federal court lacks subject matter jurisdiction to consider the underlying merits of a claim, it retains the power to decide collateral issues. *See, e.g., Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 141 (2d Cir. 2002) ("Although the district court lacked jurisdiction to decide the merits of the underlying action, it retained the power to determine collateral issues, such as the appropriateness of sanctions.").

responsive pleading from this agency, before it was filed, on the grounds that ACS is not a legal entity.  *See* Motion to Strike Anticipated Pleading.  Plaintiff's motion is denied for at least two reasons.  First, Plaintiff named ACS as a defendant and served the entity, which has appeared, through counsel, in this action.  Service of the summons and complaint triggered an obligation on the part of ACS to respond to the complaint or risk entry of a default judgment.  *See* Fed. R. Civ. P. 12, 55.[4]  Second, the fact that an agency may not be suable does not preclude representatives from that agency from appearing in a case in which it is named as a defendant and raising any applicable defenses, including that the agency is not a proper party to the proceeding.

### B.    Motions to Disqualify

Plaintiff has moved to disqualify the New York State Attorney General's Office from representing Judge Williams in this action.  *See* Motions to Disqualify.  According to Plaintiff, disqualification is appropriate because he believes that the New York Attorney General's Office is investigating "secret hearing[s]" held by Judge Williams – one involving M.M.'s mother and the other involving the Brooklyn District Attorney's Office.  *See* Dkt. 34 at 9.[5]  Plaintiff further alleges that because Judge Williams resides in Florida and "commits crimes there[,]" and the New York State Attorney General is involved with prosecuting Florida cases, the Attorney General's Office should not be allowed to represent her.  *See* Dkt. 33 at ¶¶ 1-4; 12.

Plaintiff's motion is patently frivolous, and his wild accusation of criminal conduct by

---

[4]  ACS is an agency of the City of New York.

[5]   The page numbers cited herein refer to those generated by the Court's electronic filing system, CM/ECF.

Judge Williams, without even a scintilla of supporting evidence, is wholly inappropriate.  To be clear, pursuant to N.Y. Exec. Law Section 63(1), the New York State Attorney General "defend[s] all actions and proceedings in which the state is interested[.]"  N.Y. Exec. Law Section 63(1).  Moreover, in general, a state employee is entitled to representation by the Attorney General when sued under 42 U.S.C. § 1983 ("Section 1983") for acts within the scope of his or her employment.  *See* N.Y. Pub. Off. Law § 17(2)(a) (McKinney 2021).  The two exceptions to this rule are (1) when the Attorney General "determines based upon [her] investigation and review of the facts and circumstances of the case that representation by the Attorney General would be inappropriate," and (2) "whenever a court of competent jurisdiction, upon appropriate motion or by a special proceeding, determines that a conflict of interest exists, and that the employee is entitled to be represented by private counsel of his choice."  N.Y. Pub. Off. Law § 17(2)(b).

Plaintiff's Section 1983 claims against Judge Williams arise out of rulings made in, and her handling of, a family court proceeding brought in New York State, Kings County by the Commissioner for ACS against Plaintiff, i.e., acts within the scope of her employment. *See generally*, Compl.  Moreover, Plaintiff has failed to demonstrate, with evidence, a conflict of interest that would taint the proceedings or render the New York State Attorney General's Office incapable of representing Judge Williams in this case.  *See, e.g., Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 301 (E.D.N.Y. 2009) ("[T]he Second Circuit has instructed that disqualification should only be imposed upon a finding that the presence of a particular attorney 'poses a significant risk of trial taint.'" (quoting *Glueck v. Jonathan Logan, Inc*., 653 F.2d 746, 748 (2d Cir. 1981)).

6

Accordingly, the Motions to Disqualify are denied.

### C.    Motion for Sanctions

Plaintiff seeks sanctions against Defendant Johnson and his attorneys for including the following sentence in the Johnson Motion to Dismiss: "On at least two occasions, the attorney for ACS filed two separate order to show causes alleging that the Plaintiff was in direct violation of the Order of Protection and Court Directives Issued by Judge Williams." *See* Request for Sanctions Against Johnson and His Counsel.  According to Plaintiff, this statement is false, which counsel for Defendant Johnson knew, and also was told by Plaintiff after the Johnson Motion to Dismiss was filed.  *See id*.

As noted in counsel's opposition to the request for sanctions, after Plaintiff objected to the aforementioned sentence in the Johnson Motion to Dismiss, and before he filed his motion for sanctions, counsel filed a letter with the Court to address the issue.  *See* Dkt. No. 69 (citing Dkt. No. 37).  The letter clarified that counsel "did not intend . . . to reflect that the Plaintiff was accused of violating the Order of Protection two separate times, but rather that ACS filed two Order of Show Causes, one in 2018 and one in 2020."  *See* Dkt. No. 37.  In an effort to resolve the situation, counsel also stated, "we do not object to the modification of the sentence in our motion to dismiss to reflect that only one of the orders to show cause was for the Plaintiff violating an Order of Protection[,]" and further made clear that "the details of this sentence are inconsequential to the legal arguments that are the basis for [the Johnson Motion to Dismiss]."  *Id*.

Instead of accepting counsel's proposed resolution, Plaintiff proceeded to file a lengthy motion for sanctions, with exhibits, which triggered further unnecessary motion

practice and a waste of judicial resources.  The relief Plaintiff initially sought in his letter to the Court regarding this issue was for counsel to "retract" the aforementioned statement to make clear that ACS did not file two Orders to Show Cause "alleging OOP violation[.]"  *See* Dkt. No. 36.  Counsel did this.  *See* Dkt. No. 37.  Plaintiff's request for further sanctions based on his dissatisfaction with the manner in which counsel attempted to frame the mistake to the Court is denied.[6]

### D.   Other Motions to Strike

#### 1.   Plaintiff's Motion to Strike Johnson's Reply

Plaintiff has moved to strike Defendant Johnson's reply to the Johnson Motion to Dismiss based on (1) legal arguments contained in the filing that Plaintiff believes are incorrect, and (2) the phrasing of certain statements, which Plaintiff believes are false.  *See* Motion to Strike Johnson's Reply.  As noted in the Court's Text Order entered on July 8, 2022, motions, memoranda, and the exhibits attached to such submissions are not 'pleadings' subject to a motion to strike."  Dkt. No. 104 (collecting cases).  Accordingly, the Motion to Strike Johnson's Reply is denied.

#### 2.  State Defendants' Request to Strike

Counsel for the State Defendants seeks to strike a submission from Plaintiff filed in response to the State Defendants' opposition to his proposed amended complaint.  *See* State Defendants' Request to Strike.  Plaintiff's filing is, in essence, an improper reply to the

---

[6]  Insofar as Plaintiff seeks sanctions against counsel for the State Defendants based on the State Defendants' Motion to Dismiss containing the same statement at issue, *see* Dkt. No. 81, the request is denied because (1) it was not presented through a proper motion in accordance with the Local Rules of Practice for this District, and (2) in any event, there is no prejudice to Plaintiff in light of the issue having been clarified, to the Court's satisfaction, by counsel for Defendant Johnson.

State Defendants' opposition to his non-dispositive motion to amend.  *See* N.D.N.Y. L.R.

7.1(a)(2) (noting that "Reply papers . . . are not permitted without the Court's prior

permission").  Nonetheless, in light of Plaintiff's pro se status, the Court declines to strike the

filing.

Accordingly, State Defendants' Request to Strike is denied.

## III.    REQUEST TO PROCEED ON BEHALF OF M.M.

The complaint in this case is captioned as "Robert Malek, Robert Malek C/O M.M vs.

New York State Unified Court System[, et al.]"  *See* Compl. at 1.  In addition, Plaintiff has

filed a letter request for designation as "Next Friend" to his daughter M.M.  *See* Next Friend

Request.

Federal Rule of Civil Procedure 17(c) allows a "next friend" to sue on behalf of a child

or an incompetent person who does not have a representative such as a general guardian,

committee, conservator, or other like fiduciary.  However, the "well established general rule in

the Second Circuit" has been that "a parent not admitted to the bar cannot bring an action

pro se in federal court on behalf of his or her child."  *Tindall v. Poultney High School District*,

414 F.3d 281, 284 (2d Cir. 2005).

*Tindall* was decided in the context of a claim under the Individuals with Disabilities

Education Act ("IDEA").  In 2007, the Supreme Court held that parents could appear pro se

and prosecute claims under the IDEA on their own behalf. *See Winkelman v. Parma City

School District*, 550 U.S. 516, 526 (2007).  The Supreme Court, however, declined to reach

the issue of whether the IDEA entitles parents to litigate their child's claims pro se.  *Id*. at

535. Following *Winkelman*, the Second Circuit expressly ruled that allowing a minor to be

represented by a next friend "does not alter the principle embodied in § 1654 that a non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel." *Berrios v. New York City Housing Authority*, 564 F.3d 130, 133 (2d Cir. 2009) (holding that an uncle may not represent his nephew in federal court); *see also Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1300 (10th Cir. 2011) ("In this circuit, we have held that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney." (internal quotation marks omitted)); Fed. R. Civ. P. 11(a) (requiring that every motion be signed by an attorney or a party proceeding pro se).[7]

Plaintiff is proceeding in this action pro se.  Plaintiff has not asserted that he is a licensed attorney, and he is unquestionably not admitted to practice in the Northern District of New York.  Accordingly, Plaintiff's request to represent M.M. and/or proceed pro se with claims on her behalf as next friend is denied.

## IV.   MOTIONS TO AMEND AND SUPPLEMENT

After the Johnson Motion to Dismiss was filed, and before the State Defendants or City Defendants filed their respective motions to dismiss, Plaintiff filed the First Motion to Amend and Supplement, the Second Motion to Supplement,[8] the Letter Request for Leave to Amend, and the Motion to Amend.

The day after the State Defendants' Motion to Dismiss was filed, Plaintiff filed a "draft"

---

[7]  28 U.S.C. § 1654 provides that "parties may plead and conduct their own cases personally or by counsel[.]"

[8]  Plaintiff attached to the Second Motion to Supplement a proposed supplemental pleading.  *See* Dkt. No. 59-2.  The supplemental allegations in this pleading are repeated in the proposed amended and supplemental complaint subsequently filed by Plaintiff.  *See* Dkt. No. 91.

proposed amended pleading.  Dkt. No. 76.  On June 6, 2022, the City Defendants filed their motion to dismiss.  *See* City Defendants' Motion to Dismiss.  On June 22, 2022, Plaintiff notified the Court that he intended to update his draft proposed amended pleading "very shortly[.]"  Dkt. No. 89.

By Text Order entered on June 24, 2022, the Court, among other things, advised Plaintiff that if he intended to submit a proposed amended pleading that he wished for the Court to consider before deciding the pending dispositive motions, it must be submitted prior to, or with, his opposition to the City Defendants' Motion to Dismiss.  *See* Dkt. No. 90. Thereafter, Plaintiff filed the proposed amended and supplemental complaint.  *See* Dkt. No. 91.

By Text Order entered on July 1, 2022, the Court advised the parties that Plaintiff was granted leave to submit his proposed amended pleading in lieu of the Court having to address his "draft" proposed amended pleading, and that the motions to dismiss would be evaluated in light of the proposed amended and supplemental complaint.  *See* Dkt. No. 97 (citing *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020)).

In light of Plaintiff's filing of the Motion to Amend and proposed amended and supplemental complaint, his earlier motions to amend and/or supplement the original complaint are denied as moot and/or unnecessary.  Moreover, in light of the Court's Text Order entered on July 1, 2022, the Motion to Amend is granted insofar as Plaintiff wishes for the Court to consider the allegations in the proposed amended and supplemental complaint in opposition to the motions to dismiss, and deem the proposed amended and supplemental complaint as the operative pleading in this case.  In reaching this determination, the Court makes no ruling as to whether or not Plaintiff may add parties to this proceeding, which is a

separate issue governed by Rule 21 of the Federal Rules of Civil Procedure.  *See Kaminsky v. Abrams*, 41 F.R.D. 168, 170 (S.D.N.Y. 1966) ("It has been held that the specific provisions of Rule 21 govern over the general provisions of Rule 15, and that an amendment changing parties requires leave of Court even though made at a time when under Rule 15 amendment may be made as of course."); *Duling v. Gristede's Operating Corp*., 265 F.R.D. 91, 96 (S.D.N.Y. 2010) ("To the extent a proposed amendment would add new parties, the motion is technically governed by Rule 21... rather than Rule 15(a).").[9]

## V.   SUMMARY OF THE PLEADINGS

The following facts are set forth as alleged in Plaintiff's pleadings, or indicated in documents attached thereto.

### A.   Original Complaint

On or about July 31, 2018, the Commissioner for ACS initiated a Family Court proceeding in New York State, Kings County (hereinafter, the "Family Court Proceeding") against Plaintiff pursuant to Article 10 of the Family Court Act.  *See* Compl. at 1-2, Dkt. No. 1-1 at 5-6.[10]  The petition filed by counsel for ACS, Rosmil Almonte, alleged that Plaintiff failed

---

[9]  The Court's Text Order entered on June 24, 2022, also granted Plaintiff an extension of time to file a response to the City Defendants' Motion to Dismiss, and reset the deadline to August 1, 2022.  *See* Dkt. No. 90. On July 25, 2022, Plaintiff filed an opposition to the City Defendants' Motion to Dismiss.  *See* Dkt. No. 116.  The following day, the Court issued a Text Order advising the parties that the City Defendants had seven days to file a reply to Plaintiff's opposition, and that briefing on all pending motions was otherwise closed.  *See* Dkt. No. 117. The Text Order also stated that further submissions would not be accepted from any party "in the absence of an extraordinary showing of good cause, which must be expressly articulated."  *Id*.  Despite this Text Order, Plaintiff filed the Motion to Supplement Opposition to City Defendants' Motion to Dismiss roughly one week later.  *See* Dkt. No. 126.  Plaintiff's motion does not articulate any good cause explaining why he was unable to raise any of the arguments in his submission in his prior opposition.  Furthermore, Plaintiff has been given significant leeway to respond to each of the pending dispositive motions, including through a proposed amended and supplemental complaint.  For these reasons, Plaintiff's Motion to Supplement Opposition to City Defendants' Motion to Dismiss is denied.  The Court would add only that the motion does not raise any materially new arguments that would impact the Court's ultimate conclusions discussed more fully below.

[10]  Plaintiff has attached several exhibits to the complaint.  *See* Dkt. No. 1-1.

to provide M.M. with proper supervision or guardianship.  *See* Dkt. No. 1-1 at 14-15, 26-31.

Travis Johnson, a staff attorney for The Legal Aid Society, was assigned by the Family Court

to represent the interests of M.M. in connection with the proceeding.  Compl. at 1.

The presiding judge in the Family Court Proceeding, the Honorable Jaqueline

Williams, issued a temporary Order of Protection against Plaintiff on or about July 31, 2018.

Dkt. No. 1-1 at 15. The Order of Protection directed Plaintiff to stay away from M.M. except

for during visits supervised by ACS employees.  *Id.*  Thereafter, on two occasions, the

attorney for ACS filed an Order to Show Cause.  Compl. at 2; Dkt. No. 1-1 at 11-39.

Prior to the Family Court Proceeding, Plaintiff "used to go to church" with M.M.

Compl. at 2.  In March, 2020, Plaintiff filed a motion in the Family Court proceeding

requesting that he be allowed to attend church with M.M.  *Id.* at 1.  The named defendants in

this action ignored the motion, and in doing so, prevented Plaintiff from attending church with

his daughter.  *Id.*  Judge Williams has also ignored "an immense number of motions" in the

"bogus" Family Court proceeding.  *Id.*

In 2021, Kings County Family Court Clerk Beverly Stanley improperly rejected an

order to show cause filing from Plaintiff based on her incorrect position that the filing "has to

be upon a particular state or court specific form."  Compl. at 2.  Plaintiff "contacted" the

following parties "regarding the actions of Beverly Stanley": (1) ACS; (2) NYS OCFS; (3) NYS

OIG; (4) NYS UCS; (5) the Commissioner of NYS OCFS Sheila Poole; and (6) the Honorable

Janet DiFiore, the Chief Judge of the New York State Court of Appeals who oversees the

Excellence Initiative.  *Id.*  Nobody responded to Plaintiff.  *Id.*

Neither of the two Orders to Show Cause filed by ACS were in the "form" identified by

Ms. Stanley when Plaintiff's attempted filing was rejected.  Compl. at 2.  Nonetheless, these Orders to Show Cause were "accepted" by Ms. Stanley and the New York State Unified Court System.  *Id.*  Ms. Stanley also improperly "destroyed [a] filing that was accepted by the EDDS Court Electronic Filing System."  *Id.*

Construed liberally, the complaint asserts the following claims under Section 1983: (1) a First Amendment Free Exercise claim based on the removal of Plaintiff's child and subsequent suspension of his supervised visits as ordered by the New York State Kings County Family Court, which allegedly prevents him from practicing his religion with his child; (2) a Fourteenth Amendment Due Process claim based on the failure of officials to accept the Order to Show Cause that Plaintiff attempted to file in the Family Court Proceeding seeking in-person unsupervised visitation with his child; and (3) a Fourteenth Amendment Substantive Due Process claim against Defendant Almonte based on this individual allegedly taking steps that "prevent[ed] [Plaintiff] from seeing [his] daughter for more than 1.5 years[.]"  Compl. at 2-6.  The complaint also asserts a claim under 18 U.S.C. § 2071 against Defendant Stanley.  *Id.* at 2.

The complaint seeks the following relief: (1) an order from the Court granting Plaintiff the ability to take his child to church on a weekly basis without ACS supervision; (2) an order preventing Kings County Family Court from concealing or destroying documents filed by Plaintiff; (3) an order requiring that anything Plaintiff files in Kings County Family Court not be ignored; (4) an award of costs for filing the instant lawsuit; and (5) a judgment in favor of Plaintiff for an amount up to $4,000,000,000.00.  Compl. at 5-6.

### B.    Proposed Amended and Supplemental Complaint[11]

On November 5, 2021, Plaintiff served the necessary parties in the Family Court

Proceeding with "discovery not received and . . . what [he] thought was [an] Order to Show

Cause." Prop. Am. Compl. at 20. In actuality, both documents Plaintiff served "were the

discovery not received[,]" which happened "by mistake[.]" *Id.* Minutes later, Plaintiff filed his

discovery request and Order to Show Cause in "the EDDS System[.]" *Id.* Less than a half

hour later, the "court attorney" "grant[ed] [Plaintiff] the ability to file [his] [Order to Show

Cause] through the proper channels." *Id.* That evening, Plaintiff "forward[ed] the [documents

he filed through the EDDS System] to the parties of the case[.]" *Id.*

On November 8, 2021, Plaintiff contacted Beverly Stanley regarding a previous

communication noting that Plaintiff filed his Order to Show Cause using an incorrect format

and advised her that he had "refiled" his Order to Show Cause. Prop. Am. Compl. at 20.

Plaintiff asked Ms. Stanley to "please advise[,]" yet she never responded to his

communication. *Id.* The next day, Plaintiff followed up with Ms. Stanley twice, and expressly

asked her the second time whether she was "blocking" his filing. *Id.*

Between November 10 and 12, 2021, Plaintiff emailed "many of the defendants [in]

the federal case[,]" yet received no response. Prop. Am. Compl. at 21. On November 16,

2021, a hearing took place in the Family Court Proceeding. *Id.* During the hearing, Travis

Johnson and Judge Williams "argued against" Plaintiff attending church with M.M. *Id.*

---

[11]  The proposed amended and supplemental complaint re-names the same defendants identified in the
original complaint, and also seeks to add the City of New York and the Excellence Initiative as new defendants.
*See* Prop. Am. Compl. at 26-36. Generally speaking, the proposed amended and supplemental complaint,
though more detailed, is materially similar to the original complaint with respect to the allegations of wrongdoing
that occurred before the filing date of this action. *Compare* Compl. *with* Prop. Am. Compl. For the sake of
efficiency, the Court declines to repeat these allegations herein, and will instead summarize only the new
allegations of wrongdoing that occurred near the time (and after) Plaintiff commenced this action.

Following the hearing, Plaintiff sent an "email to all parties" advising that "Travis lied." Prop. Am. Compl. at 21.  On December 7, 2021, Plaintiff "asked" the "Kings County Family Court" if any filings were made "in their system for the past 2 months."  *Id.*  Plaintiff was "provided . . . with nothing."  *Id.*

On December 20, 2021, an official from the New York State Unified Court System advised Plaintiff to "stop contacting Janet DiFiore."  Prop. Am. Compl. at 21.  In response, Plaintiff "immediately" emailed Janet DiFiore, Sheila Poole, the New York State Inspector General, the ACS Commissioner, and the New York State Attorney General.  *Id.*  Plaintiff did not receive a response to his email.  *Id.*

On February 23, 2022, Plaintiff answered the amended petition filed by ACS.  Prop. Am. Compl. at 22.  Although Plaintiff "informed" ACS, Judge Williams, Travis Johnson, and others that "they have no jurisdiction, they proceeded forward" and apparently held proceedings unbeknownst to him on February 23, March 9, and March 31, 2022.  *Id.*

On March 31, 2022, Plaintiff wrote the ACS Commissioner regarding the termination of his religious rights.  Prop. Am. Compl. at 22.  This official did not respond to Plaintiff's communication.  *Id.*  Plaintiff also sent his email to Sheila Poole, Janet DiFiore, and the New York State Attorney General.  *Id.*

On April 8, 2022, Plaintiff "asked" the Kings County Family Court "about any filings regarding [his Order to Show Cause.]"  Prop. Am. Compl. at 22.  Plaintiff did not receive a response to his inquiry.  *Id.*  On May 6, 2022, Plaintiff emailed Janet DiFiore, Sheila Poole, the New York State Inspector General and the New York State Attorney General to advise that Judge Williams "lied about [Plaintiff] not having appeared on July 31, 2018[,] and

16

removed [M.M.] from [his] home and effectively terminat[ed] [his] rights." *Id.* Plaintiff did not receive a response to his email. *Id.* On May 12, 2022, Plaintiff emailed Janet DiFiore, Sheila Poole, the Commissioner of ACS, and the New York State Attorney General regarding issues in the Family Court Proceeding. *Id.* Plaintiff also did not receive a response to this email. *Id.*

## VI.    OVERVIEW OF MOTIONS TO DISMISS AND RESPONSES

### A.    Defendants' Motions to Dismiss

As noted, Defendants Johnson, NYS OCFS, NYS UCS, DiFiore, Poole, Williams, Stanley, Almonte, and ACS have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), (3), and (6). *See* Johnson Motion to Dismiss; State Defendants' Motion to Dismiss; City Defendants' Motion to Dismiss.

Generally speaking, the aforementioned Defendants argue that venue is improper in this District because (1) Plaintiff's claims arise out of alleged wrongdoing that occurred in the Family Court Proceeding in King County, which is located in the Eastern District of New York, and (2) Plaintiff resides in Kings County. *See* Johnson Motion to Dismiss at 8-9; State Defendants' Motion to Dismiss at 10-11; City Defendants' Motion to Dismiss at 14-15. As a result, these Defendants seek dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(3). *See* Johnson Motion to Dismiss at 9; State Defendants' Motion to Dismiss at 11; City Defendants' Motion to Dismiss at 15.

Defendants further argue that the federal courts lack jurisdiction to address the claims raised in the complaint because (1) the relief requested by Plaintiff seeks to undo the Family Court's Order concerning custody, which is barred by the domestic relations exception to federal court jurisdiction, and (2) the action before this Court is, in effect, an appeal of rulings

17

made in the Family Court Proceeding, which is barred by the *Rooker-Feldman* doctrine.  *See* Johnson Motion to Dismiss at 9-10; State Defendants' Motion to Dismiss at 11-14; City Defendants' Motion to Dismiss at 16-20.  Insofar as the Family Court Proceeding remains ongoing, Defendants argue that, at a minimum, this Court should abstain from exercising jurisdiction over Plaintiff's claims pursuant to the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971).  *See* Johnson Motion to Dismiss at 9-10; State Defendants' Motion to Dismiss at 14-15; City Defendants' Motion to Dismiss at 20-21.  Defendants therefore seek, in the alternative, dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(1).

Finally, Defendants argue that Plaintiff's claims against various entities and certain individuals are barred by the Eleventh Amendment and/or immunity doctrines, and the complaint otherwise fails to state a claim upon which relief may be granted.  *See* Johnson Motion to Dismiss at 10-13; State Defendants' Motion to Dismiss at 15-24; City Defendants' Motion to Dismiss at 21-26.  Accordingly, Defendants alternatively seeks dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**B.**  **Plaintiff's Responses to the Motions**

Plaintiff has opposed each of the motions to dismiss, on several grounds, including his belief that (1) this action was properly filed in federal court because it is about "going to church with [his] daughter[,]" which impacts his constitutional rights, Dkt. No. 44 at 12, (2) ACS is not a legal entity and thus does not have standing to defend itself or prosecute the Family Court Proceeding, Dkt. No. 44 at 15-18, (3) the *Younger* abstention doctrine is inapplicable to this action because the Family Court is unable to provide the relief he seeks,

Dkt. No. 54 at 11-13, 21-25; Dkt. No. 116 at 6-7, (4) venue is proper in this District because supervisory officials employed within this District are named as defendants, Dkt. No. 54 at 17-21, 28-31; Dkt. No. 82 at 6-8, 24-29, (5) none of the State Defendants are immune from suit, Dkt. No. 82 at 2-3, 11; Dkt. No. 116 at 17-19, (6) the federal court has jurisdiction to consider Plaintiff's claims because the domestic relations exception to jurisdiction does not apply to this case, Dkt. No. 82 at 4-9, 24; Dkt. No. 116 at 4-5, (7) the *Rooker-Feldman* doctrine is inapplicable to Plaintiff's claims, Dkt. No. 82 at 9-11; Dkt. No. 116 at 6-7, and (8) the complaint adequately pleads claims against the named Defendants, Dkt. No. 82 at 11-19; Dkt. No. 116 at 10-13.

## VII.   ANALYSIS OF CLAIMS AGAINST DEFENDANTS RESIDING WITHIN THIS DISTRICT

As noted, Plaintiff contends that venue in this District is appropriate because the Honorable Janet DiFiore, NYS OCFS, NYS OIG, NYS UCS, and Sheila Poole reside in the Albany, New York area, which is located within this District. *See* Dkt. No. Dkt. No. 54 at 17-21, 28-31; Dkt. No. 82 at 6-8, 24-29.[12] For purposes of this Decision and Order only, the Court assumes that venue with respect to Plaintiff's claims against these officials is proper in this District, and that the Court does not lack subject matter jurisdiction to consider the merits of these claims. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187-89 (2d Cir. 1996) (noting that "distinguishing between a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) and a dismissal for failure to state a claim under Rule 12(b)(6) . . . is often . . . difficult in practice[,]" and acknowledging that the "general practice"

---

[12] The proposed amended and supplemental complaint also names "N. Excellence Initiative" as a proposed new defendant. *See* Prop. Am. Compl. at 18.

whenever a claim alleges federal question jurisdiction is for the court to assume that subject

matter jurisdiction exists and then to review the merits of the claim pursuant to Rule 12(b)(6));

*Sinacore v. Dep't of Corr. Servs., State of N.Y.*, 104 F.3d 354 (2d Cir. 1996) (adopting

reasoning in *Nowak* with respect to claims brought under Section 1983).

### A.     NYS OCFS, NYS OIG, NYS UCS, and the Excellence Initiative

The Eleventh Amendment has long been construed as barring a citizen from bringing

a suit against his or her own state in federal court, under the fundamental principle of

"sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the United States by Citizens of another State, or by Citizens or Subjects of any

Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe

of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S.

89, 100 (1984).  Eleventh Amendment immunity is lost only if Congress unequivocally

abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568

F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states'

immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that

New York State has not waived its immunity from suit on the claims asserted in the complaint

or proposed amended and supplemental complaint.  *See generally Trotman v. Palisades

Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*,

No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

State immunity extends not only to the states, but also to state agencies.  *See Puerto

Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U.S. 139, 142-47 (1993); *McGinty v. New York,*

251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.'"); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself.").  Thus, Plaintiff's Section 1983 claims against NYS OCFS, NYS OIG, NYS UCS, which are each agencies of the State, along with his proposed Section 1983 claims against the Excellence Initiative, which is an initiative within the New York State Unified Court System, fail because these Defendants are absolutely immune from this lawsuit.  *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("[W]e hold that the New York State Unified Court System is unquestionably an 'arm of the State'"); *Kisembo v. NYS Off. of Child. & Fam. Servs*., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) ("[T]he Second Circuit has explicitly concluded OCFS is entitled to immunity[.]" (citing *Hale v. Mann*, 219 F.3d 61, 73 (2d Cir. 2000), and collecting district court cases dismissing Section 1983 claims against the OCFS as barred by Eleventh Amendment immunity)); *Pena v. Armor Corr. Health Inc*., No. 16-CV-1554, 2016 WL 4468241, at *5 (E.D.N.Y. Aug. 24, 2016) ("As agencies or arms of the State of New York, the NYSCOC, the NYSDOCS, and the NYS Inspector General's Office are immune from suit under the Eleventh Amendment.").

Accordingly, State Defendants' Motion to Dismiss Plaintiff's Section 1983 claims against NYS OCFS, NYS OIG, NYS UCS,  and the Excellence Initiative is granted, and Plaintiff's claims against these Defendants are dismissed as barred by the Eleventh Amendment and for failure to state a claim upon which relief may be granted.

### B.    Defendants DiFiore and Poole

Insofar as the proposed amended and supplemental complaint asserts Section 1983

claims against Defendants DiFiore and Poole in their official capacities, the claims are barred

by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim

for damages against state officials in their official capacity is considered to be a claim against

the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New

York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for

damages in his official capacity, such a suit is deemed to be a suit against the state, and the

official is entitled to invoke the Eleventh Amendment immunity belonging to the state.");

*Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh

Amendment does not permit suit [under Section 1983] for money damages against state

officials in their official capacities.").[13]

Insofar as the proposed amended and supplemental complaint asserts Section 1983

---

[13] In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state
sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a
state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a
state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges
an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective."  *See In re Deposit
Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York
State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought
directly against the state, or a state agency, but only against state officials in their official capacities).  However,
the state official must also have "the authority to provide the requested relief."  *Ross v. New York*, 2016 WL
626561, at *4 (S.D.N.Y. Feb. 16, 2016) (quoting *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304,
317 (E.D.N.Y. 2014)); *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 99 (2d Cir. 2002)
("*Ex Parte Young* allows for jurisdiction over the Individual Defendants inasmuch as it is in the performance of
their duties that there may be an ongoing violation of federal law.").  Here, the only prospective injunctive relief
Plaintiff seeks relates to (1) his ability to take his child to church without ACS supervision, and (2) his future
filings in the Family Court Proceeding.  Defendants DiFiore and Poole do not have the authority to provide this
relief.  Rather, such authority belongs to the judge presiding over the Family Court Proceeding and/or the Clerk
with whom filings in that proceeding are made, i.e., Defendants Williams and Stanley.  Thus, insofar as Plaintiff
contends that he continues to suffer a violation of his constitutional rights and seeks relief that may be
characterized as prospective, the Court finds that it is not necessary for official capacity claims against
Defendants DiFiore and/or Poole to remain in this action for Plaintiff to pursue such claims (without ruling on
whether or not such claims have merit).

claims against Defendants DiFiore and Poole in their individual capacities, Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits."  *Iqbal* 556 U.S. at 676; *see also Raspardo v. Carlone*, 770 F.3d 97, 122 (2d Cir. 2014) ("[A] supervisor cannot be held liable under a theory of *respondeat superior* for the constitutional torts of his subordinates; he must be personally involved in a constitutional violation in order to generate liability under § 1983.").

The Second Circuit recently clarified that "there is no special rule for supervisory liability."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 676).

Here, the proposed amended and supplemental complaint alleges that Defendants DiFiore and Poole violated Plaintiff's constitutional rights by failing to respond to his emails wherein he raised concerns related to rulings by Judge Williams, filings by ACS, and his attempted filings in the Family Court Proceeding.  *See* Prop. Am. Compl. at 18-31.

As an initial matter, the failure to respond to Plaintiff's emails does not, without more, plausibly suggest that Defendants DiFiore and Poole were personally involved in the alleged violations of Plaintiff's constitutional rights.  *See, e.g., McCrary v. Marks*, 836 Fed. App'x 73, 74 (2d Cir. 2021) (explaining that where "the most [plaintiff] alleged is that [defendant] received his letter and directed someone at the [agency] to respond to it[, t]hat is clearly not enough to state a claim"); *Quirk v. DiFiore*, No. 20-CV-5027, 2022 WL 268976, at *3 (S.D.N.Y. Jan. 28, 2022) (dismissing Section 1983 claim against Chief Judge DiFiore where complaint alleged only that this official failed to respond to a letter sent to her by the plaintiff on one occasion, which is insufficient to plausibly suggest her personal involvement in the alleged constitutional violation); *Tripathy v. Schneider*, No. 21-CV-6392, 2021 WL 4504461, at *3 (W.D.N.Y. Oct. 1, 2021) (dismissing Section 1983 claim against Commissioner of New York State Department of Corrections and Community Supervision and Governor of New York where complaint alleged only that these officials "failed to respond" to plaintiff's complaints of wrongdoing, noting that "the failure to respond to letters protesting unconstitutional actions and/or requesting an investigation is, without more, insufficient to establish personal involvement").

Furthermore, the alleged constitutional violations that Plaintiff experienced arise out of rulings and filings (or attempted filings) in the Family Court Proceeding.  Neither the complaint nor the proposed amended and supplemental complaint contain any allegations

24

which plausibly suggest that (1) Defendants DiFiore and Poole participated in any rulings, or allowed or prohibited any filings, in that proceeding, or (2) the alleged violation of Plaintiff's constitutional rights with respect to a filing (or intended filing) was ongoing at the time he emailed these officials.

Accordingly, State Defendants' Motion to Dismiss Plaintiff's Section 1983 claims against Defendants DiFiore and Poole is granted and Plaintiff's Section 1983 claims against these officials are dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## VIII.   VENUE OVER REMAINING CLAIMS

### A.   Relevant Legal Standard

The relevant venue provision for a Section 1983 action is 28 U.S.C. § 1391(b), which provides as follows:

> A civil action may brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

When a case is filed in a district in which venue is improper, the court shall dismiss the case or, "if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."  28 U.S.C. § 1406(a).  As a general rule, once venue is challenged, the burden of establishing proper venue rests with the plaintiff.  *See, e.g.*,

25

*Henneghan v. Smith*, No. 09-CV-7381, 2011 WL 609875, at *2 (S.D.N.Y. Feb.17, 2011).

In light of the Court's dismissal of the Defendants who reside within this District, there is no longer a basis for the remainder of this action to be venued here given that all of the events or omissions that give rise to Plaintiff's remaining claims occurred exclusively within the Eastern District of New York. Accordingly, the remainder of this action is transferred to the Eastern District of New York pursuant to 28 U.S.C. § 1406(a).

## IX.    REMAINING MOTIONS

In light of the Court's decision to transfer what remains of this case to the Eastern District of New York, Plaintiff's CM/ECF Motion, Subpoena Requests, and Request for Court Intervention are denied without prejudice. In addition, the Court denies the Johnson Motion to Dismiss, the City Defendants' Motion to Dismiss, and the portion of the State Defendants' Motion to Dismiss pertaining to Defendants Williams and Stanley all without prejudice and with leave to renew following the transfer of the remainder of this action to the Eastern District of New York.

## X.    CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED** that the CM/ECF Motion (Dkt. No. 21) is **DENIED**; and it is further

**ORDERED** that the Motion to Strike Anticipated Pleading (Dkt. No. 31) is **DENIED**; and it is further

**ORDERED** that the First Motion to Amend and Supplement (Dkt. No. 32) is **DENIED**; and it is further

**ORDERED** that the Motions to Disqualify (Dkt. Nos. 33, 34) are **DENIED**; and it is

further

**ORDERED** that the Request for Sanctions Against Johnson and His Counsel (Dkt. No. 51) is **DENIED**; and it is further

**ORDERED** that the Subpoena Requests (Dkt. Nos. 55, 58) are **DENIED**; and it is further

**ORDERED** that the Second Motion to Supplement (Dkt. No. 59) is **DENIED**; and it is further

**ORDERED** that the Letter Request for Leave to Amend (Dkt. No. 62) is **DENIED**; and it is further

**ORDERED** that the Motion to Amend (Dkt. No. 63) is **GRANTED** insofar as Plaintiff wishes for the proposed amended and supplemental complaint (Dkt. No. 91) to be considered the operative pleading; and it is further

**ORDERED** that the Next Friend Request (Dkt. No. 64) is **DENIED**; and it is further

**ORDERED** that the Motion to Strike Johnson's Reply (Dkt. No. 65) is **DENIED**; and it is further

**ORDERED** that the Request for Court Intervention (Dkt. No. 107) is **DENIED**; and it is further

**ORDERED** that the State Defendants' Request to Strike (Dkt. No. 111) is **DENIED**; and it is further

**ORDERED** that the Motion to Supplement Opposition to City Defendants' Motion to Dismiss (Dkt. No. 126) is **DENIED**; and it is further

**ORDERED** that the Johnson Motion to Dismiss (Dkt. No. 27) is **DENIED without**

**prejudice** and with leave to renew following the transfer of this action to the Eastern District of New York; and it is further

      **ORDERED** that the State Defendants' Motion to Dismiss (Dkt. No. 70) is **GRANTED** with respect to Plaintiff's Section 1983 claims against Defendants DiFiore, Poole, NYS OCFS, NYS OIG, NYS UCS, and the Excellence Initiative, and otherwise **DENIED without prejudice** and with leave to renew following the transfer of this action to the Eastern District of New York; and it is further

      **ORDERED** that the City Defendants' Motion to Dismiss (Dkt. No. 79) is **DENIED without prejudice** and with leave to renew following the transfer of this action to the Eastern District of New York; and it is further

      **ORDERED** that Defendants DiFiore, Poole, NYS OCFS, NYS OIG, NYS UCS, and the Excellence Initiative are **DISMISSED** from this action; and it is further

      **ORDERED** that the remainder of this action be transferred to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1406(a); and it is further

      **ORDERED** that the Clerk advise the Clerk of the Eastern District of New York of the entry of this Decision and Order and provide all information necessary for the Clerk of the Eastern District of New York to electronically access the documents filed in this action.  The Court hereby waives the fourteen (14) day waiting period provided for in Local Rule 3.7; and it is further

      **ORDERED** that the Clerk of the Court shall provide Plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: <u>September 9, 2022</u>
         Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge